UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE ECHLIN,

                    Plaintiff,

        v.

PEACEHEALTH SOUTHWEST
MEDICAL CENTER; AND
COMPUTER CREDIT, INC.,

                    Defendants.

CASE NO. 14-5211-BJR

MEMORANDUM ORDER
GRANTING THE MOTIONS FOR
SUMMARY JUDGMENT AND
DISMISSING THE MOTION FOR
CLASS CERTIFICATION AS MOOT

Plaintiff Michelle Echlin brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, alleging that Defendants PeaceHealth Southwest Medical Center ("PeaceHealth") and Computer Credit, Inc. ("CCI") engaged in "deceptive and unfair collection practices." (Doc. No. 1). Defendants now move for summary judgment. (Doc. Nos. 38 and 42). Echlin opposes the motions and has moved to certify a class action. (Doc. No. 31). After reviewing the briefs and all other relevant material properly before the Court, the Court grants each motion for summary judgment and denies the motion for class certification. The Court's reasoning follows:

I.        BACKGROUND

Michelle Echlin is a former patient of PeaceHealth, a 501(c)(3) non-profit health system. (Doc. No. 42).[1] PeaceHealth treated Echlin on two different occasions: February 2012 and April

---

[1] PeaceHealth provides its services at a reduced rate to individuals who meet certain financial need requirements. Echlin did not apply for financial assistance.

2013. Echlin incurred roughly $1,000 in medical expenses as a result of these treatments. (Echlin Dec. at Ex. 1; Doc. No. 1 at paras. 12-13).[2]

PeaceHealth sent Echlin a bill for each visit.  Echlin did not respond to either bill or to additional requests for payment.  (Doc. No. 43 at 1-2).  Upon receiving no response from Echlin, PeaceHealth determined that Echlin's account was "delinquent" and ceased all in-house collection efforts.  (*Id*. at 2).  Pursuant to its standard policies, PeaceHealth then referred the account to CCI, a debt collection agency, for additional action.  (*Id*.).

CCI and PeaceHealth haved operated together under a Debt Collection Subscriber Agreement since 2004.  (Doc. No. 38, Ex. 6).  Pursuant to that Agreement, PeaceHealth pays CCI a fixed fee per account it refers to CCI.  CCI, in turn, provides various services, including sending collection letters, fielding collection inquiries, and assisting the processing of payments.

To initiate the collection process, PeaceHealth provides CCI with the following personal information for each debtor: her name and address; her guarantor's name (if any); the date of service; and the amount owed on her account.  Once CCI receives that information, it assigns each account a CCI key number and a CCI reference number.  (Doc. No. 38, Woods Dep. 19:18-20:14).  CCI then engages in a "data control" and screening process through which CCI identifies any potential collection problems, such as whether the claim may be barred by a statute of limitations.  (*Id*. at 23:20 – 24:10).  If CCI deems that the account can be collected, CCI sends a letter to the debtor advising her that the account has been assigned to CCI for collection

---

[2] Prior to receiving medical care at PeaceHealth, Echlin signed PeaceHealth's "Conditions of Service" agreement, ("Agreement"), stating the following relevant information: Echlin is responsible for paying any medical costs incurred during her visits no later than 30 days after billing; any failure to pay would cause her account to be assigned for collection; and Echlin may be entitled to receive an alternative payment plan or financial assistance.

purposes.  (Eddings Dec. at paras 10-12).[3]  CCI asserts that, while it shows its customers samples of its letters, it exercises complete control over the content of the letters.

CCI typically allows the debtor fourteen days to respond to the first letter.  If CCI receives payment from the debtor, CCI forwards the funds to PeaceHealth and ceases all activity on the account.  (Doc. No. 42 at 4).  If the debtor fails to pay or respond within that time, CCI sends the debtor a second letter, renewing its request that the debtor settle her account.  If the debtor does not pay her debt in response to the second letter, CCI refers the debt back to PeaceHealth for further action.  Throughout the process, CCI fields and responds to written and telephonic debtor inquiries.[4]  Accounts sent back to PeaceHealth are generally reassigned to DCS Financial for additional actions, including the filing of a collection lawsuit[5]

On April 4, 2013, PeaceHealth transmitted Echlin's information to CCI.  CCI assigned Echlin's debt a CCI account number and engaged in its screening process.  On April 5, 2013, CCI sent its initial collection letter to Echlin, seeking payment for the first visit.  (Doc. No. 50, Echlin Dec. at Ex. 1).  The letter contained the heading "Computer Credit, Inc." and provided the following:

> Your overdue balance with PeaceHealth . . . has been referred to [CCI] for collection . . . This letter will serve to inform you that your account remains unpaid and we expect resolution of your obligation to the medical center.

(*Id.*).  The letter further directed Echlin to remit payment or face "further collection activity by" CCI.  (*Id.*).  Having received no response, CCI mailed a second letter to Echlin on April 19, 2013.  This letter included the following additional statement:

---

[3] This letter is sent from CCI's own in-house mail center.  Doc. No. 38, Woods Dep. at 30:11.

[4] CCI trained its staff in receiving debtor calls and logging responses, requests for verification and notices of bankruptcy.  Eddings Decl. at para 12.

[5] DCS Financial is not involved in this lawsuit.

> This is our FINAL NOTICE and you must take action to resolve this
> overdue account.  Pay the amount due to discharge your debt owed
> to the medical center . . . this is our LAST attempt to collect this debt.

(Doc. No. 49, Ex. 3 at 2).[6]  Echlin asserts that she interpreted these letters to mean that

PeaceHealth had assigned the debt to CCI, which, according to Echlin, made her feel as if she

was under a "greater threat" than if the debt had remained with PeaceHealth only.  (Doc. No. 59

at 3).

On October 5, 2013, Echlin sent a letter to CCI, requesting that any reporting of the debt

to a credit reporting agency should indicate that the debt is disputed.  Upon receipt of Echlin's

letter, CCI marked the account as "disputed" and determined that all further collection activity

should cease.  (Doc. No. 38 Ex. 12).  CCI sent PeaceHealth a written memorandum regarding the

dispute and forwarded Echlin's response letter to PeaceHealth.

Echlin filed her Complaint on March 11, 2014, alleging violations of 15 U.S.C. §§1692e

and 1692j.  According to Echlin, PeaceHealth and CCI used the collection letters to create a

"false or misleading belief that Defendant CCI was meaningfully involved in the collection of a

debt."  (Doc. No. 1 at para. 42).  Echlin has also filed a Motion for Class Certification, arguing

that CCI and PeaceHealth engaged in similar deceptive actions against other customers.[7]  (Doc.

No. 31).  Defendants opposed the motion and have moved for summary judgment.

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[6] On September 27, 2013, Echlin received another letter from CCI seeking to collect payment from her April 2013
visit.  Echlin Dec. at Ex. 2. CCI asserts that it followed the same procedures with regard to this letter, including
mailing a "FINAL NOTICE" letter on October 5, 2013.  *Id*.

[7] Echlin has made similar claims in six other FDCPA cases.  Echlin has also received three settlements without
having to file a complaint.  *See* Doc. No. 45 at 2-3.

R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not sufficient to create a genuine issue of material fact. *Id.* at 252.

### III.     CLAIMS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

The Fair Debt Collection Practices Act ("FDCPA") is designed to protect consumers from "improper conduct" and illegitimate collection practices. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1169-70 (9th Cir. 2006). Under the FDCPA, a debt collector may not use any false, deceptive, or misleading means to collect a debt. *Id.* In determining whether a statement is deceptive or misleading, courts apply the "least sophisticated debtor" standard. *Id.* Under that objective test, the court must determine the effect the representation would have on the least sophisticated debtor. *Id.*

Echlin's Complaint alleges that PeaceHealth and CCI violated two sections of the FDCPA: 15 U.S.C. §1692j (knowingly furnishing to creditors a deceptive form); and 15 U.S.C. §1692e (making a false, deceptive, or misleading representation). Her opposition to CCI's motion for summary judgment also asserts a violation of 15 U.S.C. § 1692e(5) (falsely threatening to take a collection action).

## A.  Defendants Are Not Liable Under 15 U.S.C. §1692j

15 U.S.C. §1692j targets a practice known as "flat-rating."  S.Rep. No. 95–382 (1977). Flat-rating occurs when a third party provides a creditor with "a form which creates a false impression that someone (usually a collection agency) besides that actual creditor is 'participating' in collecting the debt."  *White v. Goodman,* 200 F.3d 1016, 1018 (7th Cir. 2000); *Vincent v. The Money Store*, 736 F.3d 88, 112 (2d Cir. 2013).  To this end, the text of the statute makes it unlawful to:

> design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not participating.

15 U.S.C. §1692j.  *See Vincent*, 736 F.3d at 97; S.Rep. No. 95–382 (1977) (flat-rating occurs when debt collector provides no other service than "lending his name to the creditor for its intimidation value, often in exchange for a 'flat' rate per letter").

In light of the statute's purpose and text, a debt collector that uses letters as his only collection tool does not violate this section if he "meaningfully participat[es] in the collection of a debt.'"  Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02.  Evidence of meaningful participation includes: directly sending demand letters on behalf of the creditor to the debtors (as opposed to merely providing form letters); handling verification of debt requests; negotiating payment arrangements; and keeping individual debtor records.  *See, e.g. Becker v. Genesis Fin. Svcs.*, 2007 WL 4190473, at 10-11 (E.D. Wash. Nov. 21, 2007); *Franchesi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 256 (S.D.N.Y. 1998); Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02; *Forman v. Academy*

*Collection Service Inc.*, 388 F. Supp. 2d 199 (S.D.N.Y. 2005) (no violation of statute where there was no indication that agency sold set of letters or use of its letterhead to creditor).

In contrast, a party does not meaningfully participate in the debt collection process if it merely supplies the creditor with form letters and "provide[s] little or no additional service." *See Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013); S.Rep. No. 95–382 (1977).  Courts have found that the debt collector provides "little or no additional service" when it: fails to provide the debtor with its contact information; fails to receive and respond to debtor inquiries; receives only basic information from the creditor about the debt; exercises little to no control over the content of the collection letters; and receives payment for mailing the letters only.  *See e,g, id.; Nielson v.* Dickerson, 307 F.3d 623, 639 (7th Cir. 2002); *Hartley v. Suburban Radiological Consultants, Ltd.*, 295 F.R.D. 357, 371-72 (D. Minn. Sept. 30, 2013).

According to Echlin, CCI was not meaningfully involved because it received only basic information about the debtor and performed "ministerial" reviews and services regarding the debt.  Doc. No. 1. at para. 28;  Doc. No. 48.  The Court disagrees.  The following undisputed facts in the record flatly contradict this claim.

At the outset, CCI receives detailed information concerning each debtor's balance.  It uses this information to create unique accounts for each debtor, screen the debtor information for collection difficulties, and prepare each letter.  These letters includes CCI's phone number, directs the debtor to visit CCI's website, and encouraged the debtor to contact CCI with any questions.  Doc. No. 38, Ex. 8.  CCI controlls the content of the letters.  CCI was also responsible for fielding debtor inquiries, both over the phone and through the website.[8]  During these inquiries, CCI provides the debtor with relevant debt information, such as information regarding

---

[8] The Agreement specifically required that "debtor telephone inquiries received at CCI shall be handled by CCI's trained personnel."  Ex. 6.  CCI received 193 calls from PeaceHealth debtors.  Woods Dep. 9:15.

PeaceHealth's charitable payment programs. CCI also encourages debtors to make payments and provides verification of debt when requested; creates web-based accounts that debtors can access to gain more information about the debt as well as payment and contact information; and encourages debtors to remit payment to either CCI or PeaceHealth. Accordingly, there can be no doubt that CCI meaningfully participats in the debt collection process.[9]

### B.  Defendants Are Not Liable Under 15 U.S.C. §1692e

§1692e prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Echlin asserts that the letters were false and misleading because each letter suggested CCI was "meaningfully involved in the collect of the debt." Doc. No. 1 at para. 23. For the reasons set forth above, the Court rejects this argument. Since the undisputed facts show that CCI was meaningfully involved in the collection of Echlin's debt, nothing CCI did was false, deceptive, or misleading.

### C.  Defendants Are Not Liable 15 U.S.C. § 1692e(5)

In her opposition to summary judgment, Echlin raised a new claim: CCI violated 15 U.S.C. §1692e(5). U.S.C. §1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken." According to Echlin, CCI violated this section by threatening to take "further collection action" that it had no intention of taking. Defendants counter that Echlin cannot raise this claim at this stage of the litigation. The Court agrees. The Complaint does not reference 15 U.S.C. §1692e(5), nor does it imply that CCI made any threats on which it was not willing to follow through. Accordingly, CCI had no notice of this claim

---

[9] Echlin also asserts that CCI cannot be meaningfully involved as a debt collector because it "did not own the alleged debts." Doc. No. 1 at para. 25. This is incorrect. 15 U.S.C. §1692j does not require a debt collector to "own" the debt. *See White v. Goodman*, 200 F.3d 1016, 1019-20 (7th Cir. 2000)("there is nothing in the statute to equate participation in collection with ownership of the debt"). To the contrary, the FDCPA defines a debt collector as an individual who "collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*." 15 U.S.C. §1692a(6) (emphasis added).

until Echlin's opposition to the summary judgment motion. Since CCI would be substantially prejudiced by undertaking an entirely new course of defense based upon these new allegations, this claim fails.

In any event, the claim, raised more than 14 months after Echlin received the letter, is barred by FDCPA's one-year statute of limitations. 15 U.S.C. §1692k(d). Echlin has not argued that the claims relate back or shown that CCI had fair notice of this claim.

IV.     ORDER

NOW, THEREFORE, IT IS ORDERED AS FOLLOWS:

1.  PeaceHealth and CCI's Motions for Summary Judgment are GRANTED with respect to all of Echlin's claims;

2.  Echlin's Motion for Class Certification is DISMISSED as MOOT; and

3.  Echlin's claims are DISMISSED.


BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE