**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHELLE ECHLIN, on behalf of herself and all others similarly situated,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>PEACEHEALTH, DBA PeaceHealth Southwest Medical Center; COMPUTER CREDIT, INC.,<br>*Defendants-Appellees.* | No. 15-35324<br><br>D.C. No.<br>3:14-cv-05211-BJR<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, Senior District Judge, Presiding

Argued and Submitted December 5, 2017
Seattle, Washington

Filed April 17, 2018

Before:  Diarmuid F. O'Scannlain, Richard C. Tallman,
and Paul J. Watford, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Fair Debt Collection Practices Act

The panel affirmed the district court's grant of summary judgment in favor of the defendants in an action under the Fair Debt Collection Practices Act.

The panel held that the plaintiff did not establish flat-rating, a practice in which a third party sends a delinquency letter to a debtor, portraying itself as a debt collector, when in fact it has no real involvement in the creditor's debt collection effort, in violation of 15 U.S.C. § 1682j. The panel concluded that the record supported the district court's finding that defendant Computer Credit, Inc., meaningfully participated in defendant PeaceHealth's debt-collection efforts, and thus did not engage in flat-rating, when its services included screening referred debtors for barriers to collection, independently composing and mailing collection letters, inviting and responding to customer questions on a variety of details about the collection process, and maintaining a website that allowed customers to access individualized information about their debts and to submit electronic files to the company.

The panel held that the district court properly struck a claim of threatening action that cannot legally be taken or that is not intended to be taken under § 1692e(5) because the complaint did not allege such a claim, and any amendment to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

add the claim would be time-barred.  The panel concluded that any claim under § 1692e(10) was waived.

## COUNSEL

Brendan W. Donckers (argued) and Daniel F. Johnson, Breskin Johnson & Townsend PLLC, Seattle, Washington; Thomas J. Lyons Jr., Consumer Justice Center PA, Vadnais Heights, Minnesota; for Plaintiff-Appellant.

Bradley L. Fisher (argued), Davis Wright Tremaine LLP, Seattle, Washington, for Defendant-Appellee PeaceHealth.

Cassandra L. Crawford (argued) and Mark A. Stafford, Nelson Mullins Riley & Scarborough LLP, Winston-Salem, North Carolina; Jeffrey I. Hasson, Davenport & Hasson LLP, Portland, Oregon; for Defendant-Appellee Computer Credit, Inc.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether, under the Fair Debt Collection Practices Act, a company that sent letters demanding that hospital patients pay their overdue medical bills meaningfully participated in the hospital's efforts to collect debts.

I

Michelle Echlin is a former patient of PeaceHealth Southwest Medical Center (PeaceHealth) in Vancouver,

Washington.  Echlin received treatment at PeaceHealth on two different occasions but never paid the nearly $1,000 in medical bills she incurred as a result.  After Echlin ignored multiple requests for payment, PeaceHealth referred her delinquent accounts to Computer Credit, Inc. (CCI), a purported collection agency, for further action.

A

For a number of years, CCI and PeaceHealth operated together under a "Subscriber Agreement" signed in 2004.  Under the agreement, PeaceHealth would refer delinquent patient accounts to CCI and, for a fixed fee, CCI would perform various services related to the debt-collection process—primarily mailing letters demanding that the patients pay their bills.  During the time that an account had been referred to CCI, PeaceHealth would suspend its in-house collection efforts.[1]

When it referred an account to CCI, PeaceHealth would give CCI the debtor's name and address, the name of any guarantor, the date of the service in question, and the amount owed on the account.  CCI would then independently screen each account for potential collection problems (such as staleness of the claim).  CCI's screening process was mostly automated, though a CCI employee would personally review at least some of the accounts for red flags.  If an account passed CCI's screening process, CCI would then send the

---

[1] CCI maintained similar arrangements with many other companies, and held hundreds of thousands of active debtor accounts at a time.  At any given time, approximately 2,000 to 3,000 of those were accounts referred from PeaceHealth, for a total of 17,500 to 18,000 PeaceHealth accounts in the year preceding this lawsuit.

debtor a letter advising her that the account had been assigned to CCI for collection purposes and demanding payment.

CCI controlled the largely formulaic letter-mailing process. Although PeaceHealth was generally aware of the standard format of CCI's letters, CCI alone controlled the content of the letters it actually sent, and CCI did not seek PeaceHealth's approval prior to mailing. The letters were written on CCI letterhead, they were mailed from CCI's in-house mailing center, and they listed CCI's address and phone number (along with PeaceHealth's contact information under a section labeled "Creditor Detail"). The letters also directed debtors to visit a website maintained by CCI, where one could see more details about his or her debt, find information about how to repay or to dispute the debt, and submit electronic documents to CCI. Like the letters, the website encouraged debtors to contact CCI by phone, fax, or mail with questions.

CCI would mail up to two collection letters for each PeaceHealth account. The first letter informed the debtor that her account had been referred to CCI, "a debt collector," for collection and requested payment either by check, by a credit card form included in the letter, or online at PeaceHealth's website. CCI itself had no ability to process or to negotiate payments for PeaceHealth, but it would forward to PeaceHealth any payments it received, including endorsing checks made out to CCI, as necessary. CCI typically allowed the debtor two weeks to respond to its first letter. If a debtor made full repayment, CCI stopped all collection activity. But if the debtor failed to pay or to respond within two weeks, CCI would send a second letter, renewing its request that the debtor settle the account. If, after another two to three weeks, the debtor still had not paid her debt, CCI would refer the

debt back to PeaceHealth and CCI's activity on the account would end.

Accounts sent back to PeaceHealth would often then be referred to another company for additional action.  As PeaceHealth describes it, CCI's activities were the first step in a series of collections processes "up to and including the point of an additional agency obtaining and executing on a court judgment."  CCI did not participate in any of the later collection steps.

CCI also handled correspondence—both in writing and over the phone—from PeaceHealth debtors.  In 2013, for instance, CCI received 440 pieces of mail from PeaceHealth debtors.  When it received such mail, CCI would "review, act on it, copy it," and then forward it to PeaceHealth, though CCI would not necessarily respond directly to the debtor herself.  For example, when it received written requests for debt verification, CCI would contact PeaceHealth to verify the validity of the debt and then either PeaceHealth or CCI would send a letter responding to the debtor.  CCI also trained its staff personally to handle phone inquiries from debtors, and CCI's Collections Manager estimated that CCI handled approximately 500 calls a week from debtors for all of its clients combined.[2]   CCI personnel gave a variety of information to callers, including clarifying basic details about their debts, assisting in understanding their insurance benefits, advising them to look into charity programs for assistance in paying, and explaining the distinction between a payment plan and a partial payment.  CCI did not generally reach out to debtors beyond the two letters, but CCI personnel

---

[2] It is not clear from our record how many of those calls were from PeaceHealth debtors specifically.

would return calls to debtors if requested, and CCI sent debtors various administrative notices, such as payment or account-closure confirmations.

B

In early April 2013, PeaceHealth sent Echlin's information to CCI for assistance in collecting the debt from her first treatment at PeaceHealth. On April 4, CCI assigned Echlin's debt a CCI account number and screened it for barriers to collection. The next day, CCI sent an initial collection letter to Echlin demanding payment. The letter was written in the form described above and stated:

> Your overdue balance with PeaceHealth . . .
> has been referred to [CCI] for collection. . . .
> This letter will serve to inform you that your
> account remains unpaid and we expect
> resolution of your obligation to [PeaceHealth].

The letter directed Echlin to remit payment in order to "prevent further collection activity by" CCI. It also instructed her to notify CCI within 30 days if she disputed the validity of the debt.

Having received no response, CCI sent a second letter to Echlin exactly two weeks later. The second letter was substantially the same as the first but included the additional notice:

> This is our FINAL NOTICE and you must
> take action to resolve this overdue account.
> Pay the amount due to discharge your debt

owed to [PeaceHealth]. . . .  [T]his is our
LAST ATTEMPT to collect this debt . . . .

Echlin neither responded nor paid the debt, and CCI returned
the account to PeaceHealth on May 5.

CCI later sent Echlin another initial collection letter,
seeking payment from her second visit to PeaceHealth.  This
time, Echlin sent a letter to CCI disputing the debt.  CCI
never responded to Echlin's letter but instead marked the
account disputed, determined that all further collection
activity should stop, and returned the account along with
Echlin's letter to PeaceHealth.

## C

On March 11, 2014, Echlin filed a putative class action[3]
against CCI and PeaceHealth, alleging violations of the Fair
Debt Collection Practices Act (FDCPA), "including but not
limited to 15 U.S.C. §§ 1692e and 1692j."  Specifically,
Echlin alleged that the letters she received "created a false or
misleading belief that Defendant CCI was meaningfully
involved in the collection of a debt prior to the debt actually
being sent to collections"—a practice commonly known as
flat-rating.  She sought statutory damages, actual damages,
and attorneys fees.

CCI and PeaceHealth moved for summary judgment.  In
response to CCI's motion, Echlin continued to press her flat-
rating claims but also argued that, even if such claims failed,

---

[3] Echlin brought suit on behalf of herself and all other "consumers . . .
who received collection letters from defendants CCI and PeaceHealth
similar to [the letters Echlin received]" within the prior year.

"CCI's practices violate the statute in other ways."  She gave one example, echoing a prohibition found in 15 U.S.C. § 1692e(5): "For instance, the FDCPA prohibits a debt collector from using any false representation or deceptive means to collect any debt and threatening to take any action that cannot legally be taken or that is not intended to be taken."  Echlin argued that CCI violated such prohibition by threatening "'further' action against Mrs. Echlin if she refused to pay her debt, but CCI had no actual authority to take *any* action against [her] outside of sending a second demand letter."[4]

The district court granted CCI's and PeaceHealth's motions for summary judgment.  It ruled that the undisputed evidence showed that CCI indeed *did* meaningfully participate in the collection of Echlin's debt, thereby precluding any flat-rating claim.  The court also struck the § 1692e(5) claim Echlin argued at summary judgment, explaining that Echlin had not fairly raised such a claim in her complaint and thus the defendants had no notice of the claim and would have been substantially prejudiced if she were allowed to add the new claim so far into litigation.  Although Echlin did not formally move to amend her complaint, the court further determined that any amendment would be futile, because at that point the new claim would

---

[4] Echlin argued that such conduct violated both § 1692e(5)'s specific prohibition against threatening to take action that is not intended or authorized and § 1692e(10)'s broader prohibition against using any false or deceptive means to attempt to collect a debt.  Despite Echlin's reference to both statutory subsections, for ease of discussion we (like the district court before us) refer to Echlin's argument as a claim for a violation of § 1692e(5), because she focused on the specific type of conduct prohibited by that subsection.

have been barred by the FDCPA's one-year statute of limitations.

## D

Echlin timely appealed and challenges the district court's rejection of both her flat-rating claims and her § 1692e(5) claim for CCI's allegedly false threats to take further collection action against her.  She also argues that she has a viable claim under § 1692e(10) for CCI's allegedly deceptive inclusion of both its and PeaceHealth's contact information in the letters it sent her.

## II

Echlin first argues that the district court erred in granting summary judgment against her flat-rating claim that CCI's letters "created a false or misleading belief that Defendant CCI was meaningfully involved in the collection of [her] debt prior to the debt actually being sent to collections," in violation of 15 U.S.C. § 1692j.

Section 1692j prohibits a practice known as flat-rating, whereby a third-party (usually for a flat rate) sells form letters to a creditor, "which create[] the false impression that someone (usually a collection agency) besides the actual creditor is 'participating' in collecting the debt." *White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir. 2000) (quoting 15 U.S.C. § 1692j(a)); *see also Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002) ("This provision bars the practice commonly known as 'flat-rating,' in which an individual sends a delinquency letter to the debtor portraying himself as a debt collector, when in fact he has no real involvement in the debt collection effort . . . .").  As the

Seventh Circuit has described, the deception in such a practice lies in giving debtors the false impression that, by involving a third party in the collection process, "the creditor does not intend to drop the matter," and "Congress's concern was that such deception might induce debtors to abandon legitimate defenses." *White*, 200 F.3d at 1018.  Because a third-party flat-rater does not participate in the debt-collection process, it, in effect, simply allows the creditor to use its name "for its intimidation value." *Nielsen*, 307 F.3d at 639.

Specifically, § 1692j makes it unlawful to:

> design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor . . . is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. § 1692j(a).  There is no doubt that CCI furnished form letters that were used to create the belief—indeed that explicitly stated—that CCI was participating in an attempt to collect the debts Echlin owed to PeaceHealth.  The question we must answer is whether there is sufficient evidence in the record to support Echlin's contention that this impression was *false*—that is, whether there is any genuine issue of fact as to whether CCI actually participated in PeaceHealth's debt-collection efforts.  *See id.*; *see also Nielsen*, 307 F.3d at 640

("The premise of liability under section 1692j . . . is that the 'flat-rater' is *not* involved in debt collection.").[5]

## A

The statute does not define what it means for a person to "participat[e] in the collection of or in an attempt to collect a

---

[5] Echlin also alleged that the same conduct violated § 1692e's prohibition against a "debt collector" using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Act defines a "debt collector" as a person who "regularly collects or attempts to collect . . . debts owed or due . . . another." 15 U.S.C. § 1692a(6). Thus, if CCI were acting merely as a flat-rater (and not actually participating in the collection of debts), it would be liable for violations of § 1692j, but would not likely be a "debt collector" and thus not liable *also* for violations of § 1692e. *See, e.g.*, *Vincent v. The Money Store*, 736 F.3d 88, 103 & n.16 (2d Cir. 2013).

Echlin argues, however, that PeaceHealth is itself liable for CCI's alleged flat-rating under § 1692e. Under the so-called false-name exception, a creditor may be held liable as its own debt collector under § 1692e if, "in the process of collecting his own debts, [he] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Some courts have held that this standard is essentially the inverse of § 1692j: a creditor who deceives debtors by hiring a third-party flat-rater is the de facto debt collector and may therefore be liable for violations of § 1692e through the false-name exception. *See Vincent*, 736 F.3d at 103 n.16; *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 738 (7th Cir. 2004). Thus, Echlin argues, if CCI is liable for violating § 1692j, PeaceHealth is likewise liable for violating § 1692e.

In any event, Echlin's §§ 1692e and 1692j claims turn on the same allegation: that CCI's letters falsely suggested that CCI was "meaningfully involved in the collection of" her debts. Our analysis of Echlin's flat-rating claims under § 1692j therefore applies with equal force to her parallel claims of misleading representations under § 1692e.

debt" owed by the consumer.  15 U.S.C. § 1692j(a).  A "debt," of course, is an obligation to pay someone money.  *See* 15 U.S.C. § 1692a(5); *Ho v. ReconTrust Co.*, 858 F.3d 568, 571 (9th Cir. 2017).  And to "collect" that debt simply means to "gather" or to "exact" it from the debtor.  *See Webster's Third New International Dictionary* 444 (1993); *Vincent v. Money Store*, 736 F.3d 88, 100 (2d Cir. 2013).  But this does little to answer our question.  There is no doubt that Echlin owed a debt to PeaceHealth and that PeaceHealth was trying to collect it from her.  One could "participate" in—i.e., "take part" in, *Webster's Third New International Dictionary* 1646 (1993)—that effort in any number of ways.  Arguably, CCI participated in the attempts to collect Echlin's debts by doing so little as drafting and mailing the collection letters to her itself, rather than merely supplying letterhead to PeaceHealth for mailing.  *See, e.g.*, *Vincent*, 736 F.3d at 116 (Livingston, J., concurring in part and dissenting in part) ("[The statute's] language clearly anticipates that a flat-rater does not itself communicate with debtors. . . .  [A] flat-rater does not 'send' the forms to the debtor, nor is the flat-rater the one that actually 'uses' the forms to deceive the debtor."); *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 734 (7th Cir. 2004) ("The classic 'flat-rater' effectively sells his letterhead to the creditor . . . so that the creditor can prepare its own delinquency letters on that letterhead." (quoting *Nielsen*, 307 F.3d at 633)).

Echlin contends—and other federal courts have suggested—however, that CCI must do more than merely mail form letters to "participate" sufficiently in debt-collection efforts.  The Second Circuit, for example, has suggested that the relevant entity must "meaningfully" participate in debt collection activities rather than "merely operat[e] as a conduit for a collection process that the creditor

controls." *Vincent*, 736 F.3d at 101, 103 (internal quotation marks omitted).  The court opined that this likely requires more than mailing form letters at the direction of a creditor, criticizing arguments to the contrary as a relying on a "hyper-technical" reading of the statute. *See id.* at 101.  The Seventh Circuit has likewise suggested that a debt collector must "genuine[ly]" participate in the collection process and wrote that § 1692j "bars the practice . . . in which an individual sends a delinquency letter to the debtor portraying himself as a debt collector, when in fact he has no real involvement in the debt collection effort." *Nielsen*, 307 F.3d at 635, 639.

The district court found that CCI "meaningfully" participated in debt collection activities under § 1692j.  The record supports that ruling.

B

Echlin primarily argues that CCI did not meaningfully participate in the attempts to collect her debts because CCI did not engage in many of the hallmark activities of debt collection.  For example, CCI did not have authority to negotiate or to process payments from debtors, it received no proceeds from payments that were made, and it was not involved in any further action that was pursued against debtors whose accounts remained delinquent.

We are not persuaded that CCI must engage in such more central debt-collection activities in order to participate meaningfully in that process.  Meaningful participation in the debt-collection process may take a variety of forms.  In similar cases, for example, lower courts have applied a litany of factors related to an entity's participation in the debt-collection process, including the amount of control the entity

exercises over the collection letters it sends, the amount of contact the entity has with debtors, whether the entity invites and responds to debtor inquiries, whether the entity may receive or negotiate payments, whether the entity receives or retains full debtor files, and whether the entity is involved in further collection activities if the debts remain unpaid. *See, e.g.*, *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 371–72 (D. Minn. 2013); *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 659–60 n.6 (S.D.N.Y. 2004); *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 313 (E.D.N.Y. 1999). Such considerations are surely not exhaustive of the ways in which one might meaningfully participate in the collection process, but we agree that activities of such sorts may evidence genuine involvement in the collection process and that our inspection of an entity's collection efforts must be holistic. The key is whether, in consideration of all that an entity does in the collection process, it genuinely contributes to an effort to collect another's debt, or instead does little more than act as a mailing service for the creditor. *See, e.g.*, *Vincent*, 736 F.3d at 103 ("[T]he appropriate inquiry is whether the third party . . . merely operat[es] as a conduit for a collection process that the creditor controls." (internal quotation marks omitted)); *Hartley*, 295 F.R.D. at 371 (flat-rater does "little more than coordinate the mailing of letters and forward responses to the creditor"); *Peters v. AT&T Corp.*, 43 F. Supp. 2d 926, 929 (N.D. Ill. 1999) ("[C]ourts have focused on whether the collection agency was hired only as a mailing service . . . ."); *see also* S. Rep. No. 95-382 (1977) ("[T]he flat-rater is not in the business of debt collection, but merely sells dunning letters.").

Although CCI could not negotiate, process, or seek to compel repayments, it participated in the attempts to collect

debts owed to PeaceHealth in a variety of other ways. Undisputed evidence in the record shows that: (1) CCI independently screened accounts for barriers to collection; (2) CCI alone drafted and mailed the collection letters, without input from PeaceHealth; (3) the letters invited debtors to contact CCI by mail or phone and CCI trained its personnel to handle such inquiries; (4) CCI in fact received approximately 500 calls a week from debtors of its various clients and received several hundred pieces of mail from PeaceHealth debtors; (5) in their conversations with debtors, CCI staff provided a variety of information about their debts and how to repay them; (6) CCI maintained a website where PeaceHealth debtors could access individualized information about their debts and submit documents to CCI; and (7) CCI sometimes received and forwarded to PeaceHealth payments it received from debtors.  Certainly, CCI could have been more directly interested in the outcome of PeaceHealth's attempts to collect on patients' debts.  Nonetheless, CCI's assistance in facilitating those efforts went beyond acting simply as a mailing house for PeaceHealth.  We are persuaded that CCI's efforts were enough to have participated meaningfully in the attempts to collect debts like Echlin's.

## C

Echlin also argues that the district court's conclusion is inconsistent with two out-of-circuit cases in which attorneys who mailed collection notices on a creditor's behalf were deemed not to have participated meaningfully in the collection process.  We disagree.

1

In *Nielsen v. Dickerson*, the Seventh Circuit considered whether certain form collection letters falsely represented that the letters came "from an attorney," in violation of 15 U.S.C. § 1692e(3).  307 F.3d at 634–35.  That question turned on whether the attorney who composed and mailed the letters in an "assembly-line fashion" was, "*as a legal professional*," actually "involved in [the] debt collection process in any meaningful sense."  *Id.* at 635, 637 (emphasis added).  The Seventh Circuit thus structured its analysis around the special requirements imposed on attorneys who purport to be participating in the collection process:

> [A] debt collection letter that is issued on an attorney's letterhead . . . conveys the notion that the attorney has "directly controlled or supervised the process through which the letter was sent"—i.e., that he has assessed the validity of the debt, is prepared to take legal action to collect on that debt, and has . . . decided that a letter should be sent to the debtor conveying that message. . . .

> "If a debt collector . . . wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors[,] . . . the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file.  Any other result would sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards . . . ."

*Id.* at 635 (quoting *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996)).

The court recounted the "ministerial" nature of the attorney's services in that case, *id.* at 635–38, and concluded that "although an unsophisticated consumer would have construed [the] letter to reflect an attorney's professional judgment that her debt was delinquent and ripe for legal action, in fact [he] had made no such assessment." *Id.* at 638 (citation omitted). Thus, "the attorney, *qua attorney*," had not contributed to the collection process "in any meaningful sense," and the letters could not fairly be said to have come from him in such capacity. *Id.* at 639 (emphasis added).

The court in *Nielsen* only briefly addressed the attorney's potential liability as a flat-rater under § 1692j, stating that, because he did not meaningfully participate in the collection process in his professional capacity, he might "seem to be a natural candidate for flat-rating liability pursuant to section 1692j." *Id.* But the court ultimately did not decide whether the attorney violated § 1692j, because any such liability would have been redundant of his liability under § 1692e(3). *Id.* at 640. Critically, the court did not discuss whatsoever whether its analysis of the attorney's § 1692j liability would have differed from its prior attorney-specific analysis under § 1692e(3). In short, *Nielsen* says virtually nothing about the sufficiency of CCI's collection efforts in this case, where CCI did not purport to be involved in the process as an attorney and which does not involve any question of liability under § 1692e(3).

2

In *Vincent v. Money Store*, the Second Circuit considered whether a creditor that hired a law firm to mail debt-collection notices could be held liable for violations of § 1692e as its own "debt collector" under the FDCPA's false-name exception,[6] because the law firm was not meaningfully involved in collection efforts.  736 F.3d at 91.  Although *Vincent* did not address § 1692e(3)'s prohibition against false representations of communications "from an attorney," the Second Circuit recounted *Nielsen* in detail and explicitly followed its analysis.  *See id.* at 102–04.  Ultimately, much as in *Nielsen*, the *Vincent* court concluded that "a jury could find" that collection letters mailed by the law firm "falsely implied that [the firm] was attempting to collect [the creditor's] debts and would institute legal action against debtors," when in fact the firm "acted as a mere conduit for a collection process [the creditor] controlled."  *Id.* at 104 (internal quotation marks omitted).  The court purportedly did not address whether attorneys should be held to a higher standard for "meaningful participation," *id.* at 104 n.17, but its conclusion drew heavily on *Nielsen*'s attorney-specific analysis and it reflected similar concerns regarding the unique sort of participation that is implied by letters that indicate the creditor has retained an attorney to collect its debts.  *See generally id.* at 102–04; *see also id.* at 114–16 (Livingston, J., concurring in part and dissenting in part) ("As the majority notes, what is potentially deceptive about the letters . . . is

---

[6] As noted above, the Second Circuit treats the § 1692a(6) false-name exception as essentially the inverse of § 1692j, and it has held that when a creditor uses the services of a flat-rater, the creditor itself can be held liable for violations of § 1692e as the de facto "collector" of its own debts. *See supra* n.5.

their implication that Moss Codilis attorneys had been retained *as attorneys* to collect the plaintiffs' debts when in reality [they had not]. . . . [C]ollecting or attempting to collect a debt in a legal capacity is not the same as collecting or attempting to collect a debt generally." (internal quotation marks omitted)).

Moreover, CCI appears to have participated to a greater degree in collection efforts than the law firm in *Vincent* did. There, the plaintiffs had presented evidence that the law firm drafted the letters "jointly" with the creditor, directed debtors to send nearly "all communication about this matter" to the creditor itself, and after mailing the demand letters "performed virtually no role in the actual debt collection process" besides verifying the existence of a debt or the identity of the creditor to those debtors who did call the firm instead of the creditor. *See id.* at 93–95 & n.3, 104 (internal quotation marks and alterations omitted). As explained above, CCI was far more directly involved in the process of attempting to collect debts for PeaceHealth.

## D

In sum, *Echlin* has not pointed to any case in which a company has been held liable for flat-rating where its services include (among other things): screening referred debtors for barriers to collection, independently composing and mailing collection letters, inviting and responding to customer questions on a variety of details about the collection process, and maintaining a website that allows customers to access individualized information about their debts and to submit electronic files to the company. We agree with the district court that these activities are enough to show that CCI

meaningfully participated in the attempts to collect Echlin's debts.

## III

Echlin also contends that the district court erred in striking her claim that CCI violated the FDCPA's prohibition against "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  She argues both that her original complaint gave CCI adequate notice of its need to defend a against such a claim,[7] and that, even if it didn't, she should have been given leave to amend the complaint to add an express § 1692e(5) claim.

## A

"Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (internal quotation marks omitted).  As the district court recognized, Echlin's complaint focused narrowly on her flat-rating allegations.  The complaint alleged that CCI "was not acting as a debt collector . . . [but instead] was acting as a flat-rater."  It elaborated in detail, alleging that PeaceHealth instructed CCI to send the letters to create the false impression that Echlin's debt had been "sent to collections" and that PeaceHealth "employed Defendant CCI's letterhead and identity as a collection agency in an attempt to deceive Plaintiff" about CCI's role in the process.

---

[7] Echlin appears to raise this claim against only CCI and not PeaceHealth.

The complaint cited § 1692j three times and alleged specifically that the letters "created a false or misleading belief that Defendant CCI was meaningfully involved in the collection of a debt prior to the debt actually being sent to collections in violation of 15 U.S.C. §§ 1692e and 1692j."

By contrast, the complaint never cited § 1692e(5), nor did it mention the FDCPA's prohibition against threatening to take an action that is not intended or legally authorized. The complaint's only references to § 1692e at all were made in direct connection with Echlin's § 1692j flat-rating allegations; indeed, as explained above, Echlin has throughout argued general violations of § 1692e that mirror her § 1692j allegations. *See supra* n.5. Although the complaint alleged that PeaceHealth was acting as a "debt collector" under the FDCPA—a necessary requirement for any claim under § 1692e, including of course a claim under § 1692e(5)—it did *not* allege that CCI was. In fact, the complaint expressly disavowed such a claim, alleging that CCI "was not acting as a debt collector when it sent the Letters." This makes sense, as the complaint's sole theory of liability was that CCI was merely a flat-rater, not a true debt collector. But it is manifestly contrary to Echlin's suggestion that her complaint claimed that CCI's conduct also violated § 1692e(5).

The closest the complaint comes to suggesting anything resembling Echlin's § 1692e(5) argument is in its alleging that CCI "was not authorized to take legal action regarding the alleged debts." Critically, however, the complaint does not allege that CCI ever threatened to take legal action despite its lack of authority to do so. In other words, the complaint does not allege the minimum facts needed to support a § 1692e(5) claim against CCI, even if one were intended.

This, again, is not surprising, because Echlin's allegation that CCI lacked authority to take legal action has consistently been cited to support her contention that CCI was merely a flat-rater.

In sum, the district court did not err in concluding that Echlin's complaint and its focus on flat-rating failed to give CCI fair notice of her later-argued § 1692e(5) claim. Echlin's attempt to add such a claim at the summary judgment stage is impermissible. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

B

Echlin further argues that, even if her original complaint did not raise a claim under § 1692e(5), she should have been granted leave to amend her complaint to add one. Although Echlin never filed a formal motion for leave to amend, the district court concluded that amendment would be futile, because, at that point, any such claim would have been barred by the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). Echlin concedes that the statute of limitations would generally bar a new § 1692e(5) claim, but she contends that the amended claim should "relate back" to the date of her original complaint. Echlin failed to make such an argument to the district court, but her argument fails in any event.

Under Federal Rule of Civil Procedure 15(c), an amendment to a complaint may "relate[] back" to the date of the original complaint where it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Fed. R. Civ. P. 15(c)(1)(B).   The claims must "share a common core of operative facts such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (internal quotation marks omitted); *see also id.* at 1133 n.9 (relation back standard "is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading").   Thus, an amendment will not relate back where the amended complaint "had to include additional facts to support the [new] claim." *Id.* at 1133.

Although Echlin's § 1692e(5) claim arises from the same general transaction as her flat-rating claims, it would not rely on all the same facts and evidence.   As discussed above, Echlin's complaint failed to allege at least two facts critical to support a § 1692e(5) claim: (1) that CCI is a debt collector under the Act and (2) that CCI threatened to take any action against her that it had no authority or intention to take.   As we have noted, the first point is in fact directly contradictory to the allegations of Echlin's complaint, and thus would naturally turn on questions not presented by those original allegations.   And the second point would likewise turn on different evidence than Echlin's flat-rating claims, as it focuses on the specific representations made in the letters rather than the nature of CCI's role in the collection process.[8] To find in Echlin's favor, the trier of fact would be called to interpret what, if anything, CCI's letters threaten to do and

---

[8] For example, at the summary judgment stage, Echlin sought to illustrate CCI's supposedly empty threats to take further action specifically by reference to representations made in the second and "final" letter CCI sent her on April 19, 2013, after she failed to respond to CCI's first collection letter—yet that second letter is not mentioned *at all* in Echlin's complaint.

whether CCI planned to follow through on those threats—questions that simply are not presented by Echlin's flat-rating claims.  CCI might well have called different witnesses or pursued a different litigation strategy to defend against such issues.  Indeed, CCI contends that it waived certain defenses arguably available to it specifically because it understood Echlin only to be raising flat-rating claims in this lawsuit.

In short, the district court did not err in concluding that CCI would have been "substantially prejudiced by undertaking an entirely new course of defense based on these [§ 1692e(5)] allegations" so far into litigation.  Any amendment to add Echlin's materially different § 1692e(5) claim would not relate back to the date of Echlin's original complaint, and would therefore be time-barred.

## IV

Finally, Echlin argues that CCI also violated § 1692e(10), because its letters deceptively included contact information for both CCI and PeaceHealth and "fail[ed] to clarify whether she should communicate with and pay CCI or PeaceHealth." Echlin failed to raise this argument at any point prior to this appeal.  Such a claim is nowhere to be found in Echlin's complaint, and she did not even bother to argue it when opposing the motions for summary judgment.  The issue is therefore waived.  *See BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 825 (9th Cir. 2000).

## V

The judgment of the district court is **AFFIRMED**.